IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| FRANK SOWERS, </br>     Plaintiff, | ) </br> ) </br> ) |
| v. | )     Case No. 1:14-cv-177 </br> ) |
| UNITED STATES OF AMERICA, </br>     Defendant. | ) </br> ) </br> ) |

## MEMORANDUM OPINION

This is an FTCA[1] medical malpractice claim brought by a federal inmate who alleges that the medical care he received while incarcerated at FCC Petersburg failed to meet the requisite standard of care. Plaintiff filed this action *pro se*, and following service of the initial complaint, defendant requested that plaintiff provide certification that he had obtained a written expert opinion pursuant to the Virginia Medical Malpractice Act ("VMMA). When plaintiff responded that he had not yet obtained such a certification, defendant filed a motion for summary judgment. An Order issued on February 25, 2015, denying the motion for summary judgment without prejudice, but allowing plaintiff to file "an amended complaint, including the expert certification required by Virginia Code § 8.01-20.1." *Sowers v. United States*, 1:14:cv-177 (E.D. Va. Feb. 25, 2015) (Order) (Doc. 21). Following the filing of the amended complaint, defendant moved to dismiss on the grounds that, *inter alia*, the amended complaint did not comply with the February 25 Order and the VMMA. This memorandum opinion records and elucidates the reasons for denying defendant's motion to dismiss.

---

[1] Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*

1

## I.

The pertinent facts may be succinctly summarized. Plaintiff, Frank Sowers, is a federal inmate currently housed at FCC Petersburg, which is located in the Eastern District of Virginia. Plaintiff is in custody of the Federal Bureau of Prisons ("BOP"), an agent of the defendant, United States of America.

In August 2009, plaintiff noticed a sudden loss of vision in his left eye, which was bloodshot and appeared to be bleeding internally. Plaintiff then promptly reported his sudden loss of vision at sick call in accordance with the BOP procedures for inmate requests for emergency medical care.

On September 18, 2009, plaintiff was examined by his assigned Mid-Level Practitioner ("MLP"), Bhagya Katta, an employee of the United States and the BOP.[2] MLP Katta was the initial contact for plaintiff and the person who initially determined whether treatment, if any, was necessary. Plaintiff told MLP Katta that he sought care for the sudden loss of vision in his left eye, explaining that a blurred blind spot in the center of his field of vision made it difficult to recognize faces when looking straight ahead. Plaintiff also told MLP Katta that he feared going blind and needed some type of emergency treatment from an eye doctor.

Despite learning this information, MLP Katta concluded that plaintiff needed nothing more than a stronger prescription for his eyeglasses. It appears that MLP Katta reached this conclusion on noticing that plaintiff possessed a pair of non-prescription reading glasses. MLP Katta further stated that plaintiff would be placed on a waiting list to see an ophthalmologist. Rather than treating his eye condition as an emergency, MLP Katta's consultation report described the request for an ophthalmologist examination as "routine" with a due date of

---

[2] The nature and extent of MLP Katta's training and expertise is unclear from the record.

December 18, 2009, approximately four months after plaintiff reported his sudden loss of vision. MLP Katta's report further indicated that plaintiff's need for a new glasses prescription was the reason for the referral.

When plaintiff was not treated within a few days of his appointment with MLP Katta, he became distressed, as the blind spot in his left eye was growing larger and more blurred. Accordingly, on September 27, 2009, plaintiff sent a request to Administrator LaRock, the Assistant Health Services Administrator responsible for scheduling inmate appointments with the ophthalmologist, asking when plaintiff would be seen by an ophthalmologist. The amended complaint does not reflect that LaRock responded to this request, and in any event, the amended complaint makes clear that plaintiff waited eight months for an ophthalmologist appointment. During this period, the blurred spot in his left eye worsened and grew. While he waited, plaintiff repeatedly asked LaRock about his ophthalmologist appointment, causing LaRock to become annoyed with plaintiff and to avoid and ignore plaintiff's repeated requests.

On December 17, 2009, plaintiff signed up for sick call and was again seen by MLP Katta. Plaintiff explained that both the vision loss and the bleeding in his eye had worsened and asked to receive treatment as soon as possible. MLP Katta refused plaintiff's request to expedite his ophthalmologist appointment and wrote in her Clinical Encounter notes that, despite plaintiff's requests, he must await his turn. Plaintiff also filed BOP administrative remedy requests asking for medical treatment. The responses to each request—dated November 27, 2009, and February 11, 2010—were the same: Plaintiff must await his turn on the waiting list.

On or about March 24, 2010, plaintiff told Assistant Warden Engel in the prison dining hall about the delay in treatment. Engel apparently intervened, and on April 23, 2010, approximately eight months after plaintiff's initial request for emergency treatment, an

ophthalmologist examined plaintiff. The ophthalmologist determined that there was active bleeding and a discharge from plaintiff's left eye and that plaintiff's vision had progressively worsened since he first reported his loss of vision to MLP Katta. The ophthalmologist tentatively diagnosed plaintiff as suffering from a fungal eye infection and referred plaintiff to a retinal specialist.

Approximately two weeks later, on May 9, 2010, a retinal specialist examined plaintiff and diagnosed him with ocular histoplasmosis, a fungal infection that progressively destroys vision as the fungal spores spread in the eye. Plaintiff was treated with two injections of a drug called Avastin, which stopped the fungal infection's progress. Nevertheless, the damage plaintiff suffered during the eight months he awaited treatment is irreversible. Plaintiff has permanently lost central vision in his left eye and can see objects in that eye only in his peripheral vision.

After exhausting his administrative remedies, as required by 28 U.S.C. § 2675, plaintiff brought this action *pro se* pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671, alleging that medical staff at FCC Petersburg were negligent in (i) failing to diagnose his eye condition promptly, (ii) failing to recognize that emergency treatment was required, and (iii) failing to provide timely specialist treatment to prevent plaintiff's permanent loss of vision.

Following service of the complaint, defendant requested that plaintiff provide a certification form indicating that plaintiff had obtained a written expert opinion pursuant to the VMMA. Shortly thereafter, plaintiff responded that he had not as yet obtained a supporting expert opinion. Defendant then moved for summary judgment, *inter alia*, on the ground that plaintiff had not complied with the expert certification required by the VMMA. On February 25, 2015, an Order issued, denying defendant's motion for summary judgment without prejudice,

and allowing plaintiff to file an amended complaint to satisfy the requisite expert certification. *Sowers*, 1:14-cv-177 (E.D. Va. Feb. 25, 2015) (Order) (Doc. 21). This was done in recognition that "it is impracticable, if not impossible, for a *pro se* prisoner to obtain such an expert certification." *Id.* Accordingly, counsel was appointed for plaintiff, and plaintiff was directed to file "an amended complaint, including the expert certification required by Virginia Code § 8.01-20.1," and to do so within thirty days of the Order. *Id.* A subsequent Order extended the deadline to April 9, 2015. *Sowers,* 1:14-cv-177 (E.D. Va. March 25, 2015) (Order) (Doc. 23).

On April 30, 2015, plaintiff filed an amended complaint, which included a "certification of expert witness opinion," alleging two counts. Count I alleges that defendant's negligence resulted in personal, physical, mental, and economic injury to plaintiff and constitutes a tort of negligence under Virginia law. Count II alleges that defendant's failure to provide medical care was negligence per se under Virginia law that resulted in personal, physical, mental, and economic injury to plaintiff.

Thereafter, on May 18, 2015, defendant moved to dismiss the amended complaint for failure to state a claim on grounds that (i) plaintiff failed to file his amended complaint by the ordered deadline, April 9, 2015, (ii) the amended complaint did not comply with the February 25 Order and the VMMA certification requirement, and (iii) the amended complaint failed to state a claim upon which relief can be granted because the negligence claims were based on defendant's failure to comply with an internal BOP Program Statement. Alternatively, defendant requests in camera inspection to ensure that the VMMA certification requirement has been met.

On July 31, 2015, an Order issued, granting in part and denying in part defendant's motion to dismiss. *Sowers,* 1:14-cv-177 (E.D. Va. July 31, 2015) (Order) (Doc. 41). Specifically,

5

defendant's motion was granted with respect to Count II, plaintiff's negligence per se claim. The motion was denied in all other respects.

## II.

At the threshold, defendant argues that plaintiff's amended complaint should be dismissed because plaintiff failed to comply with the April 9, 2015 filing deadline that was set by an Order that issued on March 25, 2015. *Sowers*, 1:14-cv-177 (E.D. Va. Mar. 25, 2015) (Order) (Doc. 23). As defendant correctly notes, plaintiff did not file the amended complaint until April 30, 2015. Yet, defendant makes no showing that this three-week delay resulted in any prejudice to the defendant. In the absence of prejudice, defendant fails to persuade, especially given that a failure to allow plaintiff to proceed in this dispute would amount to significant prejudice to plaintiff. Although Rule 15, Fed. R. Civ. P., was not specifically invoked by plaintiff or the March 25 Order, the spirit and rationale of that Rule are applicable. As Rule 15 provides that a plaintiff should be allowed to amend as "justice so requires," so, too, is it appropriate to allow plaintiff to proceed with his amended complaint as justice plainly requires that he be allowed to do so. Rule 15(a)(2), Fed. R. Civ. P. Accordingly, defendant's motion to dismiss is properly denied on this ground.

## III.

As Virginia medical malpractice law is the source of liability in this FTCA dispute,[3] the first question to address is whether the VMMA certification requirement applies in an FTCA

---

[3] The FTCA looks to state tort law as the source of liability. *See* 28 U.S.C. § 2674 (stating that the Government is "liable in the same manner and to the same extent as a private individual in like circumstances"). Because this medical malpractice claim arises from activities in Virginia, Virginia law governs. *See Starns v. United States*, 923 F.2d 34, 37 (4th Cir. 1991). Specifically, the VMMA governs, as it applies to "any tort action ... for personal injuries or wrongful death based on health care or professional services rendered, by a health care provider to a patient." Va. Code § 8.01-581.1.

case. Although the Fourth Circuit has not yet squarely addressed this issue,[4] it is now well-settled that the VMMA certification requirement applies in a diversity medical malpractice action. *See Keitz v. Unnamed Sponsors of Cocaine Research Study*, 510 F. App'x 254, 256 (4th Cir. 2013). This follows directly from the FTCA's limited waiver to sovereign immunity, which renders the government "liable in the same manner and to the same extent as a private individual in like circumstances" for the wrongful acts of a government employee acting within the scope of his employment. 28 U.S.C. § 2674; *see also Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001) (holding that the government is liable under the FTCA "in the same respect as a private person under the law of the place where the act occurred"). Importantly, the Fourth Circuit has held that, in an FTCA dispute, "courts should not engage in traditional *Erie* analysis" because "the FTCA contains an explicit instruction by Congress regarding which law to use" insofar as it instructs that the government should be held liable "'in the same manner and to the same extent as a private individual under like circumstances.'" *Cibula v. United States*, 551 F.3d 316, 321-22 (2009) (quoting 28 U.S.C. § 2674). This statutory language points persuasively to the conclusion that the entire VMMA, including the certification requirement, applies. Just as a private party in

---

[4] The Fourth Circuit has not squarely addressed this issue, but district courts in this district have consistently applied the VMMA certification requirement to medical malpractice actions brought under the FTCA. *See, e.g., Brondas v. Corizon Health, Inc.*, No. 7:14-cv-00369, 2015 WL 3491130, *7 (E.D. Va. June 3, 2015); *Reed v. United States*, No. 1:14cv247, 2015 WL 1402127, *4 (E.D. Va. March 25, 2015); *Bell v. United* States, No. 4:11cv60, 2011 WL 3734458, at *2 (E.D. Va. Aug. 24, 2011); *Bond v. United States*, No. 08-0324, 2008 WL 4774004, at *3 (E.D. Va. Oct. 27, 2008); *Parker v. United States*, 375 F.Supp.2d 594, 596-97 (E.D. Va. 2007). Significantly, none of these courts explains the reason for applying the VMMA certification requirement to an FTCA cause of action. One district court has raised the issue, but did not provide an answer, deciding the case on other grounds. *See Sanchez-Angeles v. United States*, No. 7:07-cv-00596, 2008 WL 2704309, *5 (E.D. Va. July 10, 2008) (asking "whether the expert certification [of merit] requirement, a Virginia *procedural* law, should be applied in [a federal] court" but not resolving the issue because plaintiff's claim failed for other reasons).

Virginia would not be liable if a plaintiff failed to meet the VMMA certification requirement, so, too, would the government not be liable if an FTCA plaintiff failed to meet that requirement.

## IV.

The next question presented is whether plaintiff in this case has met the VMMA certification requirement. Defendant appears to take the position that the VMMA and the February 25 Order required plaintiff to file a certification from an expert physician in addition to the amended complaint. This is a misreading of the VMMA and the February 25 Order.

Under the VMMA, every complaint that asserts a medical malpractice claim "shall be deemed a certification that the plaintiff has obtained from an expert ... a written opinion signed by an expert witness." Va. Code § 8.01-20.1. By its plain terms, the VMMA certification requirement provides that the complaint itself functions as a certification that a plaintiff has obtained the requisite expert opinion. Specifically, the complaint certifies that that the expert opinion states that "based upon a reasonable understanding of the facts, the defendant ... deviated from the applicable standard of care and the deviation was a proximate cause of the injuries claimed." *Id.* Importantly, a plaintiff need not also file the expert opinion or a separate certification together with the complaint in order to comply with the certification requirement. Nor is defendant correct in assuming that the February 25 Order required the filing of an expert opinion. Instead, the Order merely incorporated the VMMA certification requirement by requiring plaintiff to file "an amended complaint, including the expert certification required by Virginia Code § 8.01-20.1." *Sowers*, 1:14-cv-177 (E.D. Va. Feb. 25, 2015) (Order) (Doc. 21). In other words, the Order only required compliance with the VMMA certification requirement, no more and no less.

Here, plaintiff's amended complaint complied with the VMMA certification requirement and the February 25 Order. The filing of the amended complaint certified "that plaintiff ha[d] obtained from an expert witness ... a written opinion," and therefore complied with the certification requirement. Va. Code § 8.01-20.1.[5] In an abundance of caution, plaintiff also included in his amended complaint a "certification of expert witness opinion," which stated that "certification was obtained from an expert witness who Plaintiff reasonably believes would qualify as an expert witness in this matter." Pl.'s Am. Compl., at 2.

It is worth noting that the VMMA provides a mechanism for a defendant to ensure that a plaintiff has obtained an expert opinion. Once a plaintiff has requested service of the complaint, the statute entitles a defendant to ask the plaintiff to provide a "certification form" indicating that the requisite expert opinion has been obtained. Va. Code § 8.01-20.1. The VMMA defines the "certification form" as "an affirm[ation] that the plaintiff had obtained the necessary certifying expert opinion at the time service was requested." *Id.* If a plaintiff fails to provide the certification within "10 business days after receipt of [defendant's] request," a court may dismiss plaintiff's complaint with prejudice. *Id.* Importantly, even at this stage, a plaintiff need not provide the expert opinion itself in order to comply with the request; rather, plaintiff must simply provide assurance that he has obtained the expert opinion. Indeed, the VMMA states that no defendant "shall ... be entitled to discover the identity or qualifications of the certifying expert or the nature of the certifying expert's opinions." *Id.* Here, defendant did not request a "certification form" under the VMMA upon receipt of plaintiff's amended complaint. Thus, defendant was not entitled to a "certification form." Moreover, even if defendant had requested a "certification form," plaintiff has satisfied this requirement because he included in his amended complaint a

---

[5] Plaintiff's filing of the original complaint failed to comply with the VMMA certification requirement because plaintiff, when queried, admitted that he had not obtained an expert opinion.

9

"certification of expert witness opinion," which affirmed that a "certification was obtained from an expert witness who Plaintiff reasonably believes would qualify as an expert witness in this matter." Pl.'s Am. Compl., at 2. In accordance with the VMMA , this "provide[d] the defendant with a certification form that affirms that the plaintiff had obtained the necessary certifying expert opinion" from "an expert witness whom the plaintiff reasonably believes would qualify as an expert witness." Va. Code § 8.01-20.1.

In sum, plaintiff's amended complaint complies with the February 25 Order and the VMMA. Accordingly, defendant's motion to dismiss is properly denied on this ground.

V.

Analysis of defendant's motion to dismiss next properly considers whether in camera review of the expert opinion is appropriate. Under the VMMA, a court "*may* conduct an in camera review of the certifying expert opinion obtained by the plaintiff as the court *may* deem appropriate." Va. Code § 8.01-20.1 (emphases added). This language plainly leaves the decision to a court's discretion; a defendant has no right to in camera review. In cases where there is reason to doubt whether a physician would certify that the facts alleged support a medical malpractice claim, in camera review may be appropriate. But where, as here, the alleged facts clearly support a medical malpractice claim, there is no reason to question the legitimacy of a plaintiff's certification that he has obtained an expert certification. Although plaintiff had not obtained an expert when he filed his initial complaint as a *pro se* litigant, plaintiff failed to do so as a result of practical impediments to obtaining an expert opinion, not for any reason that raises suspicions about the legitimacy of the amended complaint's certification. *See Sowers*, 1:14-cv-177 (E.D. Va. February 25, 2015) (Order) (Doc. 21). Thus, in camera review is not appropriate here.

## VI.

Based on the facts alleged, there is no basis in law for applying the negligence per se principle. Therefore, defendant's motion to dismiss on this ground is granted.

But a contrary conclusion is appropriate with respect to the negligence claim, as the amended complaint sets forth a plausible claim of medical malpractice under Virginia law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## VII.

For the reasons stated here, and for the reasons stated from the bench, defendant's motion to dismiss is granted with respect to plaintiff's claim for negligence per se and is denied in all other respects.

An appropriate Order has already issued.


Alexandria, Virginia
September 28, 2015


_____
T. S. Ellis, III
United States District Judge